UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

GEORGE POTTER,

                        Plaintiff,

        -against-                                    6:21-CV-00518 (LEK)

KILOLO KIJAKAZI, *Acting Commissioner
of Social Security*,

                        Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

On May 5, 2021, Plaintiff George Potter commenced this action pursuant to 42 U.S.C. §§
405(g), 1383(c)(3), seeking review of the decision of the Acting Commissioner of Social
Security ("Commissioner") denying his application for Social Security Disability Insurance
Benefits ("DIB") for lack of disability. Dkt. No. 1 ("Complaint"). For the reasons set forth
below, the Court remands this action for further proceedings.

## I.   BACKGROUND

### A.  Factual Background

Plaintiff filed for DIB on March 10, 2017. Dkt. No. 8 ("Administrative Record" or
"Transcript") at 246. Similarly, Plaintiff filed for Supplemental Security Income ("SSI") on
March 10, 2017.[1] Tr. at 253. At the time of filing, Plaintiff was not working; Plaintiff stopped
working in 2014. Id. at 337. He testified that his last job involved apartment maintenance, but he
"wasn't able to keep up with the pace, so [he] was let go" which he attributed to the difficulties
he had breathing in the hot summer buildings. Id. at 42. Plaintiff has not worked since. Id. at 339.

_____

[1] For the avoidance of doubt, the Court uses the large, bolded numbers that appear in the bottom
righthand corner of the Administrative Record when referring to specific pages therein.

In Plaintiff's initial application for disability benefits, he claimed that he became disabled on March 21, 2013. Id. at 246, 253. However, after Plaintiff's claim was denied, he appeared at a hearing before Administrative Law Judge "(ALJ") Stanley Chin, and at the hearing Plaintiff amended his alleged disability date to February 21, 2017. Id. at 18. Plaintiff alleges that several medical conditions interfere with his ability to work including poor eyesight, back issues, lower torso pain, daily achiness, chronic obstructive pulmonary disease ("COPD") and sleep apnea. Id. at 43–46.

1.    *Dr. Cesana's Three Medical Opinions in 2013, 2016, and 2017*

In May 2013, Dr. Jennifer Cesana—Plaintiff's treating physician—completed a questionnaire detailing Plaintiff's physical limitations. Tr. at 406. Dr. Cesana opined that Plaintiff could frequently carry and lift less than 10 pounds, but could only stand, walk, or sit for 10 minutes or less because of "numbness in legs and feet," "back pain," and "possible carpal tunnel syndrome awaiting further assessment." Id. Dr. Cesana also suggested that Plaintiff is unable to crouch, or crawl, and could only occasionally perform activities such as balancing, kneeling, and stooping. Id. at 407. Additionally, Dr. Cesana determined Plaintiff would need to lie down intermittently throughout the day, elevate his legs for 15 minutes every four hours, and would have mild limitations using his hands and arms for reaching and handling. Id. Dr. Cesana also estimated that Plaintiff's conditions would cause him to be off task for at least 50% of the workday and to miss about four days of work per month. Id. at 408.

Dr. Cesana completed another questionnaire on January 14, 2016. Id. at 404. She found that Plaintiff could work for "35–40+" hours a week. Id. She also stated that Plaintiff could lift, carry, push, or pull up to 20 pounds. Id. at 405. Additionally, Dr. Cesana determined that

Plaintiff had no limitations with walking, sitting, climbing stairs, stooping, squatting, bending, crawling, reaching, or using his hands; and had just moderate limitations with standing. Id.

Finally, on September 21, 2017, Dr. Cesana completed another questionnaire. She opined that Plaintiff could lift or carry 10 pounds or less on a frequent basis; could stand or walk for a total of four hours or less during an 8-hour day; and could sit for one hour or less during an 8-hour day (for up to 30 minutes at a time). Id. at 643. Her 2017 opinion was similar to her 2013 one in that she concluded that Plaintiff would need to lie down intermittently but differed in that she indicated that Plaintiff could never climb, balance, kneel, crouch, or crawl and could only occasionally stoop. Id. at 644. She also estimated that Plaintiff's pain, fatigue, and concentration deficits would cause him to be off task for at least 50% of the day. Id. Dr. Cesana's 2013 and 2016 opinions predated Plaintiff's alleged amended onset date of February 21, 2017, so the ALJ relied on them to merely "highlight the contrast with her later opinion." Dkt. No. 14 at 18 ("Defendant's Brief").

> 2.   Dr. Jenouri's Opinion

On May 22, 2017, Dr. Jenouri offered an opinion about Plaintiff's physical limitations after performing a one-time examination. See Tr. at 596–99. Dr. Jenouri drew several conclusions. He noted that Plaintiff walked with a normal gait, could walk on his heels and toes (with difficulty), and had a limited ability to squat. Id. at 597. Dr. Jenouri also observed that Plaintiff needed no help changing for the exam or getting on and off the exam table and could rise from a chair without difficulty. Id. Moreover, Dr. Jenouri noted that Plaintiff had full range of motion in his neck, shoulders, elbows, wrists, and hands, but had a limited lumbar range of motion and positive straight-leg-raise-testing on the left and right. Id. at 598. Dr. Jenouri also highlighted that Plaintiff had mild to moderate restrictions with respect to walking and standing

for long periods, as well as bending, lifting, stair climbing, and carrying. Id. at 599. Finally, Dr. Jenouri opined that Plaintiff was restricted in activities requiring fine visual acuity, and recommended that Plaintiff avoid smoke, dust, and other respiratory irritants. Id.

### 3.   *Plaintiff's Hearing Testimony*

On October 23, 2020, Plaintiff attended by telephone a hearing before ALJ Chin. At the hearing, Plaintiff testified that the highest level of education he completed was eighth grade, and that he presently lives with this daughter. Tr. at 38. Plaintiff also testified that he has "a full certificate in plumbing . . . welding . . . [and] a partial [certificate] in small engines." Id. at 39. Moreover, Plaintiff also explained that the issues associated with his "eyesight," "back issues," and "lower torso" interfere with his ability to work. Id. at 44. Similarly, Plaintiff stated that he "can only walk for . . . certain distances before . . . [his] back hurts, or even standing," and his "only reprieve that [he] actually get[s] at all" is when he is on his "back laying down" with a heating pad or heating blanket. Id. at 46. Plaintiff also said that he spends two and a half to three hours a day laying down because his "legs are numb and [his] back hurts." Id. at 48. Additionally, Plaintiff testified that his "left eye is blurry," so it is difficult to drive at night and "hard for [him] to read cans" in supermarkets. Id. at 55.

### B.  The ALJ's Decision

On November 4, 2020, the ALJ determined that "the claimant was not disabled under sections 216(i) and 223(d) respectively, of the Social Security Act." Tr. at 23.[2] The ALJ reached

---

[2] The ALJ appears to have made a typographical error when he determined that Plaintiff was not disabled "through March 31, 2013." Tr. at 23. However, Plaintiff's amended alleged onset date occurred on February 21, 2017, and the years at issue in this action are from 2017-2020. Moreover, although not at issue here, the ALJ found that with respect to Plaintiff's application for SSI, "the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on October 23, 2020." Id. at 23.

this conclusion by proceeding through the five-step sequential evaluation process for evaluating disability under the Social Security Act. Id. at 12 (citing 20 C.F.R. § 416.920(a)).

At step one of the analysis, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since the amended alleged onset date." Id. at 14. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease, osteoarthritis of the hips, status/post-eye surgery, obesity, adjustment disorder, borderline intellectual functioning, and alcohol use disorder. Id. At step three, the ALJ determined that none of these impairments "meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." At step four, the ALJ found that Plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to no use of ladders, ropes, or scaffolds but can occasionally use ramps and stairs. He can occasionally balance, stoop, kneel, crouch, and crawl. He is limited to no use of moving machinery or exposure to unprotected heights. The claimant is limited to work requiring only monocular vision. His work would be limited to simple and repetitive tasks in a routine work setting, performed in a work environment free of fast-paced production requirements, involving only simple work related decisions and infrequent and gradual work place changes.

Id. at 16. In reaching this finding, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision." Id. at 17.

The ALJ also considered the "limiting effects of [Plaintiff's] symptoms," id. at 18, and found that:

> [T]he claimant's conditions do give rise to some limitations. However, the evidence of record does not support loss of functioning to the extent alleged. The claimant's back pain is to be expected given his DDD and while he endorsed feeling of numbness

5

> and positive straight leg testing, he had 5/5 motor strength
> throughout as well as normal gait.

Id. Additionally, the ALJ observed that, Plaintiff "testified at the hearing that he could lift up to

twenty pounds. As such, his statements regarding his musculoskeletal functioning are broadly

consistent with a limitation to light work. . . . The claimant's reported difficulty driving at night

is consistent with his monocular vision. Overall, I find his statements partially consistent." Id.

The ALJ also evaluated Plaintiff's mental functions. The ALJ "considered the effects of

claimant's mental impairments, however characterized, and in combination with each other and

the claimant's alcohol use, when formulating the mental portion of the residual functional

capacity." Id. Specifically, the ALJ considered Plaintiff's documented "borderline intellectual

functional capacity," "adjustment disorder . . . irritability, depression, anxiety . . . and the

claimant['s] . . . normal concentration and appropriate mood and affect subsequent to the

amended alleged onset date." Id. The final consideration of Plaintiff's mental limitations

included the ALJ's observation that "claimant was previously in alcohol counseling but was not

otherwise in mental health treatment. He reported inpatient hospitalization in March 2016 for

depression but no other hospitalizations." Id. Based on these findings with respect to Plaintiff's

mental limitations, the ALJ concluded that Plaintiff "is limited to simple and repetitive tasks in a

routine work setting, performed in a work environment free of fast-paced production

requirements, involving only simple work related decisions and infrequent and gradual work

place changes." Id.

The ALJ then recounted his analysis of the opinion evidence of record. First, the ALJ

found that the opinion of Patrick Costello, M.D.—which opined that Plaintiff had no visual

restrictions on functioning given his corrected vision of 20/20 in his better eye—deserved only

partial weight. Id. The ALJ noted that this opinion "fails to take into account that the claimant has monocular vision." Id.

Second, the ALJ found that the opinion of Plaintiff's provider, M. Radulescu, M.D., who opined that Plaintiff should avoid lifting heavy weights (later clarifying no more than fifteen pounds), deserved little weight. Id. The ALJ reasoned it deserved such minor consideration because the opinion "is vague, does not identify any other restrictions, and is not accompanied by rationale as to why the claimant is limited for fifteen rather than ten or twenty pounds. It is inconsistent with the claimant's own hearing testimony that he can lift up to twenty pounds." Id.

Third, the ALJ afforded the January 2016 opinion of Plaintiff's primary care physician Jennifer Cesana, M.D., "some weight." Id. at 19. The ALJ noted that in January 2016, Dr. Cesana opined that the "claimant was limited to lifting, carrying, pushing, and pulling twenty pounds, moderately limited in standing and working at heights and could work "35-40+ hours a week." Id. at 19. But the ALJ noted that in May 2013, Dr. Cesana previously opined that:

> [T]he claimant should lift ten pounds occasionally, walk for one hour out of an eight hour workday and sit for one hour, never climb, crouch or crawl and occasionally balance, kneel and stoop, needed to lay down for fifteen minutes every four hours, had mild difficulties with reaching, handling, fingering, and feeling, would be off-task fifty percent of the workday and absent four days a month.

Id. The ALJ noted that both of "these opinions are supported by direct observation of the claimant over the course of treatment but are both remote in time to the period at issue." Id. However, the ALJ found that the "2013 opinion vastly overstates the claimant's limitations and is generally inconsistent with evidence over the period at issue while the 2016 opinion is more or less consistent with the same, albeit limited in scope, given he had 5/5 motor strength throughout as well as normal gait." Id. As a result, the ALJ afforded the 2016 opinion "some weight," and the 2013 opinion "very little weight." Id. The ALJ then addressed Dr. Cesana's 2017 opinion and

found that it was "substantially similar to the 2013 opinion. As above, this opinion overstates the claimant's limitations and is generally inconsistent with the evidence discussed immediately above and I afford it very little weight." Id. (citations omitted).

Fourth, the ALJ found that the opinion of psychological consultative examiner, Christina Caldwell, Psy.D., deserved "little weight." Id. Dr. Caldwell opined in 2013 that Plaintiff could "follow and understand simple directions and instructions and perform simple tasks independently, and maintain attention, concentration, and schedule, but would be limited in his ability to learn new tasks, perform complex tasks, make decisions, interact with others, and deal with stress, but could manage his own funds." Id. However, the ALJ found that this opinion should be afforded little weight because the opinion is "only partially consistent with the current evidence showing normal memory and concentration and appropriate mood and affect, and remote in time to the period at issue given the amended alleged onset date." Id.

Fifth, psychological consultative examiner, Sarah Long, Ph.D., opined that Plaintiff "had mild to moderate limitations regarding complex tasks and making appropriate decisions but no other limitations." Id. The ALJ noted that this opinion is "supported by a one-time examination of the claimant and fails to take into account his borderline intellectual functioning which was remarked upon at said examination. That the claimant is not otherwise significantly limited is generally consistent with the evidence given normal memory and concentration and appropriate mood and affect." Thus, the ALJ afforded Dr. Long's opinion "partial weight." Id.

Sixth, the ALJ found that the opinion of consultative examiner, Dr. Jenouri who opined — "claimant had mild to moderate restriction walking and standing long periods, bending, climbing stairs, lifting, and carrying, and was restricted from activities requiring fine visual

acuity as well as from exposure to pulmonary irritants," id.—deserved partial weight. This justification was because the opinion was

> supported by a one-time physical examination of the claimant and while vague is broadly analogous to light work. Restrictions on irritants are not entirely consistent with the record as a whole despite the claimant's medically determinable COPD given the general lack of abnormal respiratory findings or necessity of treatment for acute respiratory distress.

Id. The ALJ then considered the opinions of two state agency consultants. First, the ALJ considered the opinion of State Agency Consultant, G. Feldman, M.D., who opined in June 2017 that, Plaintiff "could occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds and sit, stand, or walk for about six hours." Id. at 20. Second, another State Agency Consultant, T, Bruni, Ph.D., opined in July 2017 that "there was insufficient evidence as to the claimant's mental functioning prior to the date last insured and his mental impairments within the period at issue were not severe." Id. The ALJ noted that Dr. Feldman's opinion "is somewhat consistent with the current record, as a whole, but I have assigned additional limitations to account for the claimant's vision problems and obesity." Id. With regard to Dr. Bruni, the ALJ stated, "While the psychological consultant did not find severe mental impairments, I have limited the claimant to unskilled work to account for his borderline intellectual functioning" and determined that "this is not material to the decisional outcome." Id. Accordingly the ALJ gave "some weight" to Dr. Feldman's opinion, and "little weight" to Dr. Bruni's opinion. Id.

Based on this evidence the ALJ concluded that he

> limited the claimant to work at the light exertional level with occasional postural activities but no ladders, ropes, or scaffolds to account for the claimant's degenerative disc disease and arthritis in combination with his obesity. To account for the claimant's visual impairment, he is limited to work requiring only monocular vision and restricted from use of moving machinery or exposure to unprotected heights.

Id. Additionally, the ALJ found that since February 21, 2017, Plaintiff has been unable to perform any past relevant work. Id. However, the ALJ found that Plaintiff was able to perform work prior to 2017 as a machine operator and apartment maintenance worker. Id. The ALJ noted that this work was "substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period . . . The claimant is limited to work at the light exertional level. Accordingly, the claimant is unable to perform past relevant work as actually or generally performed." Id.

At step five, the ALJ found that based on Plaintiff's RFC, age, education, and the relevant guidelines, Plaintiff would be able to perform the requirements of representative occupations including "Ticket Seller," "Parking Lot Cashier," and "Router." Id. at 22. Accordingly, the ALJ determined that a finding of "not disabled" was appropriate. Id. at 23

### C.  The Present Action

Plaintiff commenced suit in this Court on May 5, 2022, to challenge the denial. See Compl. Plaintiff moved for judgment on the pleadings, Dkt. No. 11 ("Plaintiff's Brief"), and primarily argues that the ALJ erred in determining Plaintiff's RFC at step 4 of his analysis. Pl.'s Br. at 9.[3]

To support his position, Plaintiff raises several arguments. First, Plaintiff argues that the ALJ failed to develop the administrative record because of his reliance on Dr. Jenouri's vague opinion. Specifically, Plaintiff argues that because the ALJ relied "upon snippets from multiple pieces of medical source opinion evidence, none of which he afforded partial weight," but relied chiefly on Dr. Jenouri's opinion assessing Plaintiff's "ability to perform light work," the ALJ

---

[3] Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure 12(c) in accordance with General Order #18.

erred because the ALJ even conceded that the opinion is "vague [but] broadly analogous to light work." Pl.'s Br. at 10. And because of this vagueness, Plaintiff argues that the ALJ should have sought clarification from Dr. Jenouri. Id.  According to Plaintiff, the ALJ failed to seek clarification from Dr. Jenouri but decided to rely on the opinion anyway, which resulted in a "[failure] to develop the record regarding this evidence upon which he obviously relied in assessing RFC and who was hired by the Social Security Administration." Id. As a result, Plaintiff believes this error warrants a remand.

Second, Plaintiff argues that, "The ALJ failed to explain how the opinions of Dr. Jenouri are 'broadly analogous' to the exertional requirements of light work." Id. at 12. In particular, Plaintiff argues that, "The ALJ fails to discuss how Dr. Jenouri's findings regarding standing or walking for 'long periods' is consistent with the requirements of light work." Id. Consequently, Plaintiff argues, this serves as an additional basis for remand.

Third, Plaintiff argues that a remand is warranted because the ALJ "did not address the considerations raised in SSR 83-14 regarding the impact of plaintiff's visual impairment on the ability to perform light exertional level work." Id.

Fourth, Plaintiff argues that "the ALJ's description of the plaintiff's visual difficulties is not consistent with the evidentiary record since the plaintiff testified about his inability to even properly read labels at customary differences." Id. at 12–13. Thus, Plaintiff argues that a remand is warranted to "properly address the effect of this non-exertional limitation upon the Plaintiff's ability to perform light work." Id. at 13.

Fifth, Plaintiff argues that the ALJ improperly considered opinions that predated Plaintiff's amended alleged date of disability. Therefore, Plaintiff argues, "The fact that the ALJ

discusses and acknowledges that this evidence had some impact on his determination regarding residual functional capacity during the time period in question constitutes legal error." Id. at 14.

Sixth, Plaintiff argues that the ALJ erred because he failed to "afford appropriate weight to the opinions of treating sources." Id. Plaintiff argues, that the "ALJ explained how he accorded weight to the opinion evidence when deriving his finding of residual functional capacity. However, his reasoning was inconsistently applied. He failed to apply the same reasoning to both treating and consultative sources." Id. at 15.

In response, Defendant filed a motion for judgment on the pleadings, Dkt. No. 14, arguing that substantial evidence supports the ALJ's RFC finding. Def.'s Br. at 11. Specifically, after recapping the opinions considered by the ALJ, id. at 12–14, Defendant argues that the ALJ was entitled to weigh all of the evidence available when making an RFC determination and make a conclusion that was consistent with the record, which Defendant argues the ALJ did. Id. at 15. Defendant also contends that the ALJ was under no obligation to contact Dr. Jenouri before relying on his "vague opinion." Id. Relatedly, because the ALJ was under no obligation to contact Dr. Jenouri—Defendant argues—Plaintiff's argument regarding gaps in the administrative record also fails. Id. at 15–16.

 Next, Defendant argues that the ALJ's purported failure to explain how Plaintiff's limitations were "broadly analogous to light work" is misguided because courts in this Circuit have routinely recognized that moderate physical limitations—such as those found in Dr. Jenouri's opinion—are consistent with light work." Id. at 16 (internal citations omitted). Defendant also argues that the ALJ did not err by failing to specify how long Plaintiff could stand or walk when determining that that he could perform light work, because the regulations

the ALJ cited to ostensibly explain this conclusion.[4] Id. at 17. Moreover, Defendant argues that

contrary to Plaintiff's contentions, the ALJ actually considered the Plaintiff's visual impairments

and the effects of Plaintiff's visual impairments on his ability to perform light work. Id. at 17–18.

Defendant also asserts that the ALJ did not err when he discussed medical opinions that predated

Plaintiff's amended alleged onset date. Id. at 18. Finally, Defendant argues that Plaintiff

improperly relies on an inaccurate statement of law regarding Plaintiff's argument that more

weight should have been given to the opinion of his treating source. Id. at 18–19.

## II.     STANDARD OF REVIEW

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supported the decision.

Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013); Brault v. Soc. Sec. Admin. Comm'r, 683

F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). "'Substantial evidence' is 'more than a mere

scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting

Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Whatever the meaning of 'substantial' in

other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill,

139 S. Ct. 1148, 1154 (2019). If supported by substantial evidence, the Commissioner's findings

"will be sustained . . . even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the

[Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). However,

"Within that limitation on its scope, appellate review of an administrative record is plenary, and

---

[4] Defendant does not elaborate on this point. See Def.'s Br. at 17.

not merely a rubber-stamping of the administrative conclusion." <u>Williams on behalf of Williams</u> <u>v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." <u>Williams</u>, 859 F.2d at 258. Although an ALJ is not required to explicitly analyze every piece of conflicting evidence in the record, <u>see</u> <u>Miles v. Harris</u>, 645 F.2d 122, 124 (2d Cir. 1981) ("we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony"), the ALJ cannot "pick and choose evidence in the record that supports his conclusions." <u>Cruz v. Barnhart</u>, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004).

When claiming error, a plaintiff bears the burden of showing he was harmed by it. <u>See</u> <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking [an] agency's determination."). The Second Circuit has not definitively ruled on the required showing to warrant a remand. But some district courts within the Second Circuit have found that the "mere probability" or "possibility" of prejudice to a Social Security claimant is enough to warrant remand to the Commissioner. <u>See,</u> <u>e.g.</u>, <u>Koutrakos v. Astrue</u>, 906 F. Supp. 2d 30, 39 (D. Conn. 2012); <u>Torres v. Colvin</u>, No. 3:13-CV-1914, 2015 WL 13729869, *6 (D. Conn. Dec. 2, 2015), <u>report and recommendation</u> <u>adopted,</u> No. 3:13-CV-1914, 2016 WL 1182978 (D. Conn. Mar. 28, 2016).

## III.   DISCUSSION

### A.  Alleged Failure by the ALJ to Clarify Dr. Jenouri's "Vague" Opinion

Plaintiff first argues that because Dr. Jenouri's opinion was so vague, the ALJ was obligated to recontact him to resolve the opinion's ambiguity.[5] Pl.'s Br. at 10. And because the ALJ relied on this opinion so heavily—Plaintiff argues—the ALJ failed to develop the record, since the ALJ's reliance on this ambiguity produced gaps in the record. Id.

Under 20 C.F.R. § 416.902(b)(b)(2):

> We consider evidence to be insufficient when it does not contain all the information we need to make our determination or decision. We consider evidence to be inconsistent when it conflicts with other evidence, contains an internal conflict, *is ambiguous*, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques. If the evidence in your case record is insufficient or inconsistent, we may need to take the additional actions in paragraphs (b)(1) through (4) of this section.

Id. (emphasis added). To clarify ambiguity or inconsistencies in medical opinions, ALJs have several options under 20 C.F.R. § 416.902b(b)(2)(i)-(iv). The regulations provide in relevant part that:

> (i)   We may recontact your medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;
> (ii)  We may request additional existing evidence;
> (iii) We may ask you to undergo a consultative examination at our expense;
> (iv)  We may ask you or others for more information

See id.

---

[5] The "duty to recontact" was eliminated for claims filed on or after March 27, 2017, but still applies to Plaintiff's claim, which was filed on March 10, 2017. See Tr. at 246, 253; see also 20 C.F.R. §§ 416.912, 416.920b(b).

Courts in this Circuit have required remand when ALJs have failed to clarify a medical

opinion's ambiguity. See Hunter v. Berryhill, 373 F. Supp. 3d 393, 398 (E.D.N.Y. 2019)

(ordering a remand because the ALJ gave a medical opinion "less weight because [the opinion]

used 'vague terms'. . . [when] the ALJ should have asked [the physician] to be more concrete in

her assessment"). Id. Additionally, the Second Circuit has advised ALJs to recontact non-treating

physicians who have issued vague opinions. Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013)

(highlighting that the ALJ should have contacted the physician because his medical opinion was

"remarkably vague" and was "left to the ALJ's sheer speculation").

Here, Defendant contends that remand is inappropriate because (1) "the duty to

recontact" applies only to treating source opinions, Def.'s Br. at 15–16, and (2) there were no

obvious gaps in the administrative record, id. at 16.

The Court disagrees. First, Defendant argues that the duty to recontact applies only to

treating source opinions. Id. Defendant supports this statement with a citation only to 20 C.F.R. §

416.912(e), which Defendant contends highlights in relevant part: "Generally we will not request

a consultative examination until we have made every reasonable effort to obtain evidence from

your own medical sources." Def.'s Br. at 16. However, it is unclear to the Court how this bare

language supports Defendant's position. Indeed, the applicable regulations do not hold that the

duty to recontact is exclusive to treating sources. The regulation states

> If the evidence in your case record is insufficient or inconsistent, we
> may need to take the additional actions in paragraphs (b)(1) through
> (4) of this section. . . . We may recontact your medical source. We
> may choose not to seek additional evidence or clarification from a
> medical source if we know from experience that the source either
> cannot or will not provide the necessary evidence. If we obtain
> medical evidence over the telephone, we will send the telephone
> report to the source for review, signature, and return.

20 C.F.R. § 416.920b(b). Contrary to Defendant's assertion, the regulation does not mention or even allude to the requirement that recontacting is applicable only to a treating source. See 20 C.F.R. § 416.920b(b)(i). Additionally, the Second Circuit has indicated that non-treating physicians should be recontacted for clarification of their reports. See Selian, 708 F.3d at 421 ("At a minimum, the ALJ likely should have contacted [non-treating physician] Dr. Naughten and sought clarification of his report."). Thus, the scope of the treating source rule as explained by Defendant has no basis in regulation or case law.

Second, the Court agrees with Plaintiff that Dr. Jenouri's opinion was impermissibly vague, and additionally, that the ALJ failed to develop the record. Dr. Jenouri found Plaintiff to have "mild-to moderate" restrictions with respect to walking and standing for long periods. Tr. at 599. From this assessment, the ALJ concluded that this assessment is "broadly analogous to light work." Tr. at 19. However, the ALJ did not elaborate on this analogy to light work, and even concedes that Dr. Jenouri's medical opinion (which he relied on) was "vague." Id. Indeed, the ALJ neglected to explain how these limitations were analogs to "light work" as that term is defined in the Social Security Regulations, the Social Security Rulings, or the Dictionary of Occupational Titles (DOT). See 20 CFR § 404.1567; SSR 83-12 SSR 83-14; Dictionary of Occupational Titles, Appendix C.[6] The ALJ himself failed to make any specific findings regarding standing or walking, stating only that Plaintiff has the RFC to "perform light work as defined in 20 CFR § 404.1567(b) and 416.967(b)." Tr. at 19.

---

[6] "The major difference between sedentary and light work is that most light jobs—particularly those at the unskilled level of complexity—require a person to be standing or walking most of the workday." SSR 83-14.

Thus, it appears that Dr. Jenouri's opinion is the primary source the ALJ relied on for Plaintiff's standing and walking limitations.[7] The ALJ nevertheless relied on this "vague" opinion when weighing Plaintiff's RFC, by granting the opinion "partial weight." However, the ALJ has a duty to develop the record when an inconsistency or *ambiguity* arises. 20 C.F.R. §§ 404.1512(e), 416.912(e) (emphasis added).  "The ALJ must not only develop the proof but carefully weigh it." Donato v. Secretary of Department of Health & Human Services, 721 F.2d 414, 419 (2d Cir.1983). Additionally, an "ALJ cannot accept or reject physician's opinion without first attempting to fill any clear gaps in the administrative record." Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir.1999). Nevertheless, the ALJ accepted Dr. Jenouri's ambiguous opinion by concluding that the opinion supported the ALJ's finding that Plaintiff's "moderate" physical limitations can be analogized to light work. Tr. at 19.

Relatedly, this Court has held that "[an] ALJ may not rely on opinions that employ the terms 'moderate' and 'mild' absent additional information." Craig R. v. Berryhill, No. 18-CV-0630, 2019 WL 4415531, at *5 (N.D.N.Y. Sept. 16, 2019) (Kahn, J.) (citing Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000) (such terms are "so vague as to render them useless")). Here, the ALJ fails to provide "additional information." Indeed, the ALJ appears to have placed great

---

[7] The other pieces of evidence the ALJ relied on when determining Plaintiff's standing and walking capacity were three opinions by Dr. Cesana from 2013, 2016, and 2017. Tr. at 19. The ALJ afforded the 2013 and 2017 opinions "very little weight" and the 2016 opinion "some weight" but qualified the "some weight" evaluation by noting the opinion was "remote." Id. However, even as Defendant concedes, Def.'s Br. at 18, Dr. Cesana's 2013 and 2016 opinions predated Plaintiff's amended alleged onset date of February 21, 2017, so those two opinions were appropriate only "to highlight the contrast with her later [2017] opinion." Id. Additionally, the ALJ relied on Dr. Feldman's opinion that "Plaintiff could occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds and sit, stand, or walk for about six hours." Def.'s Br. at 13 (citing Tr. at 82).

weight on Dr. Jenouri's opinion since the ALJ does not point to other evidence showing that "moderate" and "mild" limitations are consistent with light work.

Defendant nevertheless argues that Dr. Jenouri's opinion is consistent with "light work" based on a litany of cases. Def.'s Br. at 17–18. Defendant observes, "courts in this Circuit have routinely recognized that moderate physical limits—such as those found in Dr. Jenouri's opinion—are consistent with light work." Id. (internal citations omitted). However, the ALJ did not rely on this explanation and list of cases provided by Defendant; the ALJ by contrast asserted his analogy in a conclusory manner without any of the support offered by Defendant. Def.'s Br. at 16; Tr. at 19. This sort of ad-hoc justification is impermissible under Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194 (1947). Id. at 196 ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."); see also Fry v. Comm'r of Soc. Sec., 5:21-CV-461, 2022 U.S. Dist. LEXIS 175576, at *3 n.4 (N.D.N.Y. Sept. 28, 2022) (Kahn, J.). As a result, the ALJ's findings with respect to Plaintiff's light work limitations are not supported by substantial evidence. Accordingly, a remand is appropriate to clarify the ambiguity of Dr. Jenouri's opinion and develop the record with respect to how Plaintiff's "mild-to-moderate" restrictions while walking and standing are broadly analogous to light work.

### B. Plaintiff's Other Arguments

Plaintiff raises several other arguments, Pl.'s Br. at 9–15, but the Court need not address them at this time. Because "many parts of the ALJ's analysis are likely based on his assessment of the record as a whole, the ALJ's analysis throughout the [d]ecision may change when the record is fully developed. Therefore, it would be appropriate for the ALJ to revisit his

conclusions at all steps of the [d]ecision in light of the full record," Delgado v. Berryhill, No. 3:17-CV-54, 2018 WL 1316198, *15 (D. Conn. Mar. 14, 2018). In this case, the decision may change when the ALJ re-contacts Dr. Jenouri, revisits his concededly "vague" opinion, and elaborates how this opinion or other evidence supports a finding that Plaintiff's standing and walking limitations are "broadly analogous" to the exertional requirements of light work. The decision may change, especially because the ALJ's "prior decision was made with incomplete information." Id.

Moreover, the Court is "mindful of the often painfully slow process by which disability determinations are made . . . a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial delay. . . [such that] hardship to a claimant of further delay should be considered." Butts v. Barnhart, 388 F.3d 377, 387 (2d. Cir. 2004) (quoting Caroll v. Sec'y of Health & Hum. Serv., 705 F.2d, 638, 644 (2d. Cir. 1983)). Indeed, because Plaintiff filed for DIB over five years ago, the Court will impose time limits on the proceedings on remand. See Hunter, 373 F.Supp.3d at 398 (holding that a time limit for the ALJ on remand is necessary because the claimant filed for disability over six years prior); see also Butts, 388 F.3d at 387 ("In this case, the past delay is of such magnitude–years–that a time limit is warranted."). Consequently, the ALJ must develop the record and render a decision within 120 days of this Memorandum-Decision and Order. If the ALJ denies benefits, the Commissioner must render a final decision within 60 days of the ALJ's decision. Additionally, if either time limit is exceeded, a calculation of benefits owed Plaintiff shall be made immediately by the Commissioner. Upon calculation, the Commissioner shall grant Plaintiff benefits immediately. Butts, 388 F.3d at 387; Hunter, 373 F. Supp. 3d at 398.

**IV.   CONCLUSION**

20

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) be **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 14) be **DENIED**; and it is further

**ORDERED**, that the Commissioner's decision be **REMANDED**; and it is further

**ORDERED**, that the ALJ develop the record regarding how Plaintiff's physical limitations are consistent with light work, including *inter alia*, re-contacting Dr. Jenouri to seek clarification on his vague opinion; and it is further

**ORDERED**, that after development of the record, the ALJ must render a decision within 120 days of the date of issuance of this Memorandum-Decision and Order; and it further

**ORDERED**, that if the ALJ denies benefits, the Commissioner must render a final decision within 60 days of the ALJ's decision; and it is further

**ORDERED**, that if either time limit is exceeded, a calculation and grant of benefits owed Plaintiff shall be made immediately by the Commissioner; and it further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:       October 7, 2022
             Albany, New York

LAWRENCE E. KAHN
United States District Judge

21